John C. RICHARDSON

v.

WALSH CONSTRUCTION COMPANY, Morrison-Knudsen Company, Inc., and Henry J. Kaiser Company.

Civ. A. No. 60–432.

United States District Court
W. D. Pennsylvania.

Jan. 11, 1963.

Hymen Schlessinger, Pittsburgh, Pa., for plaintiff.

Robert E. Wayman, Dickie, McCamey, Chilcote & Robinson, Pittsburgh, Pa., for defendant.

ROSENBERG, District Judge.

In this suit for damages which plaintiff sustained while engaged in the construction of a sanitary sewer, counsel for the parties and the Court by agreement submitted for jury determination the preliminary question which consisted of the following interrogatories:

"No. 1.   Was the plaintiff on June 26, 1958, an employee of the joint venture comprised of Walsh Construction Company, Morrison-Knudsen Company, Inc., Henry J. Kaiser Company and B. Perini & Sons, Inc.? /s/ YES

"No. 2. Was the plaintiff on June 26, 1958, an employee of Perini Corporation, only? ————" [1]

The sole matter before the Court is plaintiff's motion for new trial setting forth seventeen reasons predicated almost entirely upon the Court's admission or non-admission of divers exhibits each of which will be discussed in detail.

## HISTORY

On June 26, 1958, the plaintiff, as a laborer in the construction of a sanitary sewer line for the Allegheny County Sanitary Authority, received an injury which resulted in the surgical amputation of his left leg. He received disability payments pursuant to an agreement under the Pennsylvania Workmen's Compensation Act, and he entered suit in this Court against Walsh Construction Company, Morrison-Knudsen Company, Inc., Henry J. Kaiser Company and Perini & Sons for damages resulting from the injuries sustained in that accident.

In his complaint, he averred that he was a laborer in the employ of Perini & Sons, a corporation, which at the time was a contractor engaged in the construction of a project or projects of a sanitary sewer disposal system, or a portion thereof under a contract entered into between Perini & Sons and the Allegheny County Sanitary Authority.

He also claimed that the defendants, Walsh Construction Company, Morrison-Knudsen Company, Inc., Henry J. Kaiser Company and Perini & Sons, were "contractors engaged in a similar venture at the place where the plaintiff sustained his injuries and had control of the operations, personnel and equipment at said time and place of the accident, but were independent contractors and not employers of the plaintiff."

An additional averment was contained in the complaint that the injuries "were caused by the negligence of the defendants, their agents, employees and servants jointly and severally. * * *"

Only three of the defendants, Walsh Construction Company, Morrison-Knudsen Company, Inc., and Henry J. Kaiser were served, Perini was not served. The three defendants who were served filed an answer and set forth four defenses. In the third defense, they admitted that the plaintiff was a laborer of B. Perini & Sons and also alleged that the plaintiff was an employee of these defendants as well as B. Perini & Sons on June 26, 1958.

In the fourth defense, they stated, "At the time of the events complained of in the plaintiff's complaint, the plaintiff was an employee of Walsh Construction Company, Morrison-Knudsen Company Inc., Henry J. Kaiser Company and B. Perini & Sons. Therefore, the recovery of the plaintiff, if any, is limited to the applicable provisions of the Pennsylvania Workman's Compensation Law."

## ADMISSION AND NON-ADMISSION OF EXHIBITS

Because no transcript of testimony was prepared, this Court is required to rely upon notes which the Court of its own volition took down at time of trial as well as the Court's best recollection of proceedings at time of trial, and accordingly the exhibits will not be noted in chronological sequence.

Sixteen exhibits were admitted into evidence:

(a) In support of defendant's affirmative defense:

Defendants' Exhibit No. 4 "Employment Record" signed by the plaintiff on October 1, 1956, indicating the names of B. Perini & Sons, Inc., and Walsh, Morrison, Kaiser, Pittsburgh, Penna., in the upper left hand corner.

Defendants' Exhibit No. 5 "Payroll Check No. 3921," dated October 6, 1956, in the amount of $65.27 payable to the order of John Richardson, the plaintiff, and indicates B. Perini & Sons, Inc., and Walsh, Morrison, Kaiser stamped thereon, with the payor as B. Perini & Sons, Inc., and Walsh, Morrison, Kaiser above the authorized signature.

1. The jury was instructed to answer either interrogatory in the alternative only.

Defendants' Exhibit No. 6 a similar payroll check, No. 31752, dated June 28, 1958 payable to John Richardson in the amount of $58.29 with the names Perini Corporation and Walsh, Morrison, Kaiser stamped thereon, and the name Perini Corporation and Walsh, Morrison, Kaiser above the authorized signature.

Defendants' Exhibit No. 1 "Contract Agreement" dated the 26th day of January, 1956, as entered into between the Allegheny County Sanitary Authority, party of the first part and B. Perini & Sons, Inc., a Massachusetts Corporation, Walsh Construction Company, an Iowa Corporation, Morrison Knudsen Company, Inc., a Delaware Corporation and Henry J. Kaiser Company, a Nevada Corporation (a Joint Venture), party of the second part. For B. Perini & Sons, Inc., the contract is signed by its President, Louis R. Perini, and attested by the Assistant Secretary. For Walsh Construction Company, appears the signature of its President and the attest of its Assistant Secretary. For Morrison Knudsen Co. Inc., appears the signature of its Vice President and the attest of its Assistant Secretary. For Henry J. Kaiser Company appears the signature of its Vice President and the attest of its Assistant Secretary. The execution of the contract so far as the parties of the second part are concerned, bears their respective corporate seals.

Defendants' Exhibit No. 9 "Certified Copy of Fictitious Corporate Name" of the Prothonotary of Allegheny County, dated May 21, 1962, to the effect that an application of registration was filed in that office on March 4, 1958, under the Fictitious Corporate Name of Perini Corporation and Walsh, Morrison, Kaiser at Corporation #191–C in accordance with the requirements of Act No. 374 of the General Assembly of the Commonwealth of Pennsylvania, 54 P.S. § 81 et seq. It contains this statement, "The character of business carried on is the construction of a portion of Allegheny County Sewer Tunnel, Pittsburgh, Pennsylvania."

Defendants' Exhibit No. 10, a group of affidavits styled as "Contractor's Certifi-cate of Satisfaction." The first is by Louis R. Perini, President of Perini Corporation, dated February 10th, 1960; the second is by T. J. Walsh, Jr., President of Walsh Construction Company, dated February 10th, 1960; the third is by Carroll F. Zapp, Vice President of Morrison-Knudsen Company, Inc., dated February 13th, 1960; and the fourth is by George Havas, Vice President of Henry J. Kaiser Company, dated February 12th, 1960. These four affidavits are similar and contain the same wording, that is that each is a member of the joint venture known as Perini Corporation and Walsh, Morrison, Kaiser, pursuant to the contract with the Allegheny County Sanitary Authority being Contract 50 for constructing parts of the Monongahela River intercepting sewer, etc.

Defendants' Exhibit No. 12 being, or purporting to be the official receipt dated July 7, 1958 from Perini Corp., & Walsh, Morrison, Kaiser regarding John C. Richardson for injury or disability sustained June 26, 1958 by the Bureau of Workmen's Compensation.

Defendants' Exhibit No. 13, "Withholding Tax Statement, 1958, Form W–2", for John Richardson by Perini Corporation and Walsh, Morrison, Kaiser setting out the employee's Social Security number and the amount of Federal income tax withheld, with the total wages before payroll deductions paid.

Defendants' Exhibit No. 14, "Employee's Earnings Record" for the plaintiff and sets forth his Social Security number for the year 1958, and contains at the bottom of the payroll sheet the name of Perini Corporation & Walsh, Morrison, Kaiser.

(b) Opposing defendant's affirmative defense:

Plaintiff's Exhibit No. 1, "Agreement for Compensation for Disability or Permanent Injury", which was signed by the plaintiff as employee, and by B. Perini & Sons as the employer, and the Continental Casualty Company, as the authorized agent or insurance carrier by a signatory for that company as claims

manager. In this agreement is also contained the weekly rate of compensation and for the particular period of time for which it is to be paid. This exhibit was admitted into evidence except for the amounts of compensation. This exhibit will be discussed further.

Plaintiff's Exhibit No. 3, "Employee's Earning Record" for 1956 as it applies to the plaintiff and sets forth his Social Security number, in addition to the amounts of payments, deductions, etc. It is noted as being by B. Perini & Sons, Inc.

Plaintiff's Exhibit No. 5, sight draft issued by Continental National Group dated May 22, 1962, payable to John C. Richardson for a loss which is dated June 26, 1958 in the sum of $150.00. It sets out the plaintiff to be the claimant, and B. Perini & Sons the insured.

Defendants' Exhibit No. 4, application for employment, although it is noted as the "Employment Record". It indicates the signing by the plaintiff on October 1, 1956, and his address, and that he is hired as a laborer at $2.08 an hour, together with other information. It also contains his Social Security number. It has printed on the left top corner, B. Perini & Sons, Inc., and Walsh, Morrison, Kaiser.

Plaintiff's Exhibit No. 7, photostatic copy of two "Benefit Rate Determination Notices" as issued by the Pennsylvania Bureau of Employment Security on which it is shown that B. Perini is the employer of one E. Gregory, and Perini Cor. is the employer of one J. Washnock. These two employees were fellow employees of the plaintiff, indicating these three employees of B. Perini were inferentially not employees of the joint venture.

Plaintiff's Exhibit No. 6, receipt dated December 23, 1958 showing the amount of money due the Perini Corporation on an invoice dated respectively August 19, 1958 for $22.64, and as an advance to petty cash dated September 14, 1958, in the sum of $20.00 is setting forth the amount of a payroll check. This is typed on a letterhead of Perini Corporation and Walsh, Morrison, Kaiser, A Joint Venture. It has on the right hand corner the notation to address all communications to Perini Corporation.

Plaintiff's Exhibit No. 8, "Binder" for "Boiler and Machinery Insurance dated April 12, 1956, issued by the Hartford Steam Boiler Inspection and Insurance Company to the applicant B. Perini & Sons, Inc.

Plaintiff's Exhibits Nos. 9 and 9a (also noted as defendant's Exhibit No. 15) "Employee's Earning Record" for 1957 for John Richardson showing his Social Security number. At the bottom of this is printed B. Perini & Sons, Inc.

Plaintiff's Exhibit No. 12, a group of papers from the United States Treasury Department, Internal Revenue Service, showing John C. Richardson as the taxpayer and in some instances with his wife, jointly, but also showing that the employer's name had been Sun Drug Co. Inc., B. Perini & Sons, Inc., and Perini Corporation.

### PLAINTIFF'S EXHIBITS NOT ADMITTED

■ The plaintiff bases his right to a new trial on the exclusion of plaintiff's Exhibits Nos. 2, 4, 9, 10, 11 and part of No. 1. As was previously stated, the amounts of compensation payments in plaintiff's Exhibit No. 1 were not admitted in evidence, and for that reason this particular exhibit was not sent out with the jury together with the other admitted exhibits. The amounts of payments were not admitted because this Court decided that it was irrelevant and prejudicial to the issue before the jury. The plaintiff attacks this on the theory that "this created an embarrassing and prejudicial situation for plaintiff's counsel—that we were trying to put somehing over on the jury". This is not factually correct because the jury was given a fair understanding of the exhibit at the time of its admission, and there was nothing which could possibly be construed as being either prejudicial or embarrassing to the plaintiff, and this is so in spite of the fact that plaintiff's counsel chose, in his clos-

ing speech, to brandish this particular exhibit before the jury as a token of discrimination and injury, because of his inability to have the jury see the exhibit as a whole.

Plaintiff's Exhibit No. 2 was not admitted in evidence because it was self-serving and of no probative value. This exhibit was a pencil-written statement of the plaintiff, in the first person, giving his age, his residence and employment for the past year by B. Perini & Sons as a miner, stating that on Thursday, June 26, 1958, he suffered an injury and was removed by police ambulance to the Homestead Hospital where medical treatment was administered and his left leg amputated. It further states that he was disabled on that date. It asserts that he read the statement and that it is true. The plaintiff contends that this was competent to prove that Perini was his employer and not the joint venture. It is quite obvious that there was no commitment here by anyone sufficient to bind either Perini or the joint venture.

Plaintiff's offer of his Exhibit No. 4 was refused. This is a letter signed by Michael Kisse, adjustor of the Pittsburgh Claim Department of the Continental Casualty Company, on Continental Casualty Company's stationery dated August 11, 1960, and notifying his attorney that the Casualty company was the insurance carrier for B. Perini & Sons, whose employee John C. Richardson was insured, and that under the Pennsylvania Workmen's Compensation Law the employer or its insured is subrogated to the right of the injured party.

This exhibit was submitted during cross-examination of the witness, Kisse, and for the purpose of showing that the insurance company was directly interested in defeating the plaintiff's claim, that Kisse was biased and prejudiced and that this would seriously impeach his testimony. There is nothing to indicate that this witness gave any evidence other than factual testimony insofar as the records of the company were concerned. The character of this exhibit would have served plaintiff's purpose less than it would have prejudiced and confused the issue in the minds of the jury.

Plaintiff offered Exhibit No. 9. This was a letter signed by the Assistant Manager, Louis Potyka of the Continental Casualty Company on Continental Casualty Company stationery, addressed to Mr. Fernand M. DiBerto, office manager of B. Perini & Sons, Inc., referring to the subject matter of A. M. Byers Company, Baltimore & Ohio R. R. Co., and Pennsylvania R. R. Co. The letter was excluded as irrelevant to the subject matter.

The plaintiff also confuses Exhibit No. 9 and Exhibit No. 10. Plaintiff's Exhibit No. 10 is a letter of the stationery of Boit, Dalton & Church Insurance, 89 Broad Street, Boston, dated January 15, 1958 and addressed to Fernand M. DiBerto, Office Manager of B. Perini & Sons, Inc. It discusses certificates of insurance for "Allegheny County Sanitary Authority" and the "various railroads and public utilities listing the coverages you have in force with the Continental Casualty Company." The plaintiff offered this exhibit because it referred to the payroll of Workmen's Compensation insurance in the name of B. Perini & Sons, Inc. There was no question that the compensation was carried in the name of B. Perini & Sons, Inc., and was not denied by the defendants. Exhibit No. 10 then would be cumulative; but even if it had been cumulative, it would have been allowed had it not contained other irrelevant subjects of discussion.

Plaintiff also offered Exhibit No. 11. This was a letter dated July 24, 1958, on the stationery of Continental Casualty Company signed by Michael Kisse, Adjustor, Pittsburgh Claim Department, which was addressed to B. Perini & Sons, and was a request for the wage earnings for the period of one year for John Richardson and Leon Wetherell. The months were set out in the letter as originally typed, but subsequently there was written in opposite the months in ink certain sums of money for both of these persons.

No explanation was offered as to how these amounts came in. The plaintiff offered this exhibit as a bare communication between the insurance carrier and the employer with reference to the particular plaintiff involved in this case. Plaintiff argued that this would corroborate and strengthen the evidence that Perini was the employer. Admission was refused because, as in the prior exhibit, it contained foreign matter to that relating to the plaintiff, and that at the most it was cumulative. Again this would not have been refused on the basis of being cumulative, except that it contained additional matter and the entry of unexplained figures could broaden and confuse the issue in the minds of the jury.

### FAILURE OF DEFENDANT TO OFFER INTO EVIDENCE CONTRACT OF JOINT VENTURE

■ The plaintiff argues further that the defendant should have offered into evidence its contract of the joint venture and that although this had been set forth at the pretrial, it was necessary that this be presented to the jury to support the defendant's contention that they were a Joint Venture. The defendants relied on the sufficiency of their evidence, and contended it was not incumbent upon them to introduce any evidence that they believed unnecessary. The plaintiff, however, made no attempt himself to offer it, and it was accordingly not introduced or admitted into evidence. However, the plaintiff was permitted to comment to the jury on the defendant's failure to introduce the contract.

### PLAINTIFF'S CONTENTION OF SUBMITTING ISSUE OF EMPLOYMENT PRELIMINARILY AS ERROR

■ The plaintiff further argues that this court directed that the issue of employment be separated and submitted to the jury preliminarily, and that this was done over the objection of the plaintiff.

Immediately prior to the time of trial, an informal conference with counsel for both the plaintiff and defendants and without any indication of objection or any desire to record any objection by either counsel, the Court determined that the allegation of the defendants of a joint venture was an affirmative defense and that the burden of proving it was upon the defendants, and that for the purpose of avoiding any confusion which might result by such burden of proof, and in order to simplify the issues, it was advisable to separate the issue, and require the defendants to first prove the affirmative defense before proceeding with the plaintiff's case.

The plaintiff also argues that this Court directed that the issue of employment be separated and submitted to the jury preliminarily, and that this was done over the objection of the plaintiff. This last statement is absolutely untrue because both the plaintiff and the defendant agreed to this simpler method of procedure. As stated previously, the matter had been discussed in chambers in great detail, and the issue agreed to. Had there been the slightest objection voiced on the part of either counsel, and if this Court were to make a ruling over any objection, it would have been made and noted on the record. Because no objection was raised and because the parties agreed to the separation of the issue, no record was made of this hearing.

It is my considered judgment that of the various questions which a jury would have to consider here, that the double pronged question of liability should have been first separated so as to determine whether the employer at the time of the accident was Perini only, or Perini, Walsh, Morrison and Kaiser, as a Joint Venture.

### WEIGHT OF THE CONFLICTING EVIDENCE

Summarizing the evidence as presented either by the plaintiff and the defendants, we have favoring the plaintiff the evidence of his employment by Perini, as indicated in defendant's Exhibit No. 3, which is the "Employee's Withholding Exemption Certificate, Form W–4"; by plaintiff's Exhibit No. 1, which is "Agreement for Compensation for Disability or Permanent Injury"; by Plaintiff's Exhibit No. 5 which is a sight draft of Workmen's Compensation payment to the plaintiff with Perini as employer; by

plaintiff's Exhibit No. 3 which is the "Employee's Earning Record" for the year 1956 showing Perini as the employer; by plaintiff's Exhibit No. 8 which is the "Boiler and Machinery Insurance" showing Perini as the insured; and by plaintiff's Exhibit No. 12 which is the Internal Revenue Service report showing the plaintiff as the employee and Perini as employer.

Favoring the defendants as a Joint Venture are defendants' Exhibit No. 4 which is the "Employment Record", and it indicates the signing by the plaintiff with the Joint Venture names; defendants' Exhibit No. 5 is the payroll check to the plaintiff dated October 6, 1956, showing the jointure names; defendants' Exhibit No. 6, dated June 28, 1956 shows the plaintiff as payee and the jointure names as printed thereon. Relating to these two last exhibits, there was oral testimony that all payroll checks between these dates were similar and contained the jointure names. Plaintiff's Exhibit No. 6 is a receipt on the stationery of Perini Corporation and Walsh, Morrison, Kaiser, a Joint Venture, dated December 23, 1958, received from Fernand DiBerto, Office Manager; plaintiff's Exhibit No. 12 is the plaintiff's earnings record for 1958 showing the Joint Venture names; Plaintiff's Exhibit No. 13 is the "Withholding Tax Statement" for the year 1956 for the plaintiff showing the joint venture names; defendant's Exhibit No. 1 is the "Contract Agreement" between the Allegheny County Sanitary Authority with the joint venture names with the words "a Joint Venture" noted on Contract No. 50 for the intercepting sewers; defendants' Exhibit No. 10 is the "Contractor's Certificate of Satisfaction" for Contract No. 50 showing affidavits by all of the named persons of "said joint venture of the contract with the Allegheny County Sanitary Authority.... for constructing ........"; defendants' Exhibit No. 12 is the receipt from the Commonwealth of Pennsylvania dated July 7, 1958 relating to the plaintiff and to the members of the Joint Venture; and defendants' Exhibit

No. 9 is a "Certificate" of the Prothonotary of Allegheny County dated May 21, 1962 of registration in his office on March 3, 1958 under the Fictitious Names Act for the named defendants for carrying on the business of the construction of a portion of the Allegheny County Sanitary Authority sewer tunnel.

Oral testimony was produced by the defendants that for the sake of convenience, the defendants, as members of the joint venture, carried on the business in the name of Perini Corporation; that it was for this reason that the Workmen's Compensation and other insurance was in this name; and that certain forms and stationery of Perini were used, as for instance the employee's earnings record, until new stationery was received showing the joint venture members. This in substance was the evidence which was presented to the jury. It had ample competent evidence before it to make a fair decision.

## THE COURT'S INSTRUCTIONS

The jury had proper instructions regarding the meaning and elements necessary for constituting a joint venture. It also had before it considerable instructions on employment as relates to a joint venture. This Court instructed the jury as follows:

### "JOINT VENTURE

"Since the defendants contend that they are a joint venture, I shall give you a definition of that term, and the law as it relates to joint ventures.

"Joint ventures are recognized in law and are commonly used for certain purposes.

"A joint venture is an association of two or more persons, or corporations, or corporations and persons mixed, to carry out a single business enterprise for profit, for which purpose they combine property, money, effects, skill and knowledge.

"As a general rule, in order to constitute a joint venture there must be a community of interest in the performance of a common purpose, a joint proprietary interest in the subject matter, a mutual

right to control, a right to share in the profits, and a duty to share in any losses which may be sustained.

"A joint venture has been defined as such a combination of persons or corporations, where in some special venture a profit is jointly sought without any actual partnership or corporate designation.

"The contract must be by agreement of the parties who comprise it, though not necessarily in writing.

"Ordinarily, certain factors are present by which a joint venture is constituted.

"1.  Each party to the venture must make a contribution, not necessarily of capital, but by way of service, skill, knowledge, property, rights, or money.

"2.  Profits must be shared among the parties.

"3.  There must be a joint proprietary interest and a right of mutual control over the subject matter of the enterprise.

"4.  There is usually a single business transaction or project, rather than a general ánd continuous transaction.

"A joint venture is not a partnership. It is an association of parties, either corporate or personal, to engage in a single business enterprise for profit."

"EMPLOYMENT

"As for the meaning of the word "employment", I am sure that all of you have a definite understanding of its meaning and significance.  The relation of employment usually occurs when one known as the employer pays a salary or wage to another known as the employee in return for which the employee renders to the employer service, whether these be physical or mental, or mixed physical and mental effort or energy, by which the employer obtains particular benefits. This is fundamental, but, ordinarily, there are other incidents.

"The test of whether or not an employer-employee relation exists varies in each case, but ordinarily these factors should be considered in determining whether such a relation exists:

"1.  Where was the individual working on the date in question?

"2.  Was he using a particular person's equipment, or was the equipment borrowed, leased or rented by a particular person on the date in question?

"3.  Whose work was he doing on the date in question?

"4.  Who paid him for his work on the date in question?  And the days preceding the day in question?

"5.  Who protected him in Workmen's Compensation and Social Security?

"6.  Who was his immediate superior at the time in question, and who gave him directions as to the details of the work he was doing?

"7.  Who was in charge of the work he was doing on the date in question?

"8.  Who had the right of control over him in the work he was doing on the date in question?

"These latter two factors are very important.

"In determining whether a person is the employee of another, it is necessary that he not only be subject to the latter's control or right of control with regard to work to be done and manner of performing it, but that the work which is to be performed is on the business of the employer or for his benefit."

The jury was carefully instructed on the sole and only issue in this case and while evidence had been presented on insurance and workmen's compensation payments, as well as lawsuits in state courts, the jury was instructed to disregard these matters and consider only the one issue of whether or not Perini alone was the employer, or Perini with the other three were joint employers.

They were also instructed regarding the failure of any party to submit either testimony or exhibits, and that they could probably draw an inference that any party who had knowledge of material facts or exhibits which were in the control of one party or the other, and whose interest it naturally would be to produce them, that without satisfactory explanation, the party then failed to produce them, the jury might draw an inference that the witnesses or testimony would have been

unfavorable to that party if such were presented. This was in line with the plaintiff's demand to protect the joint venture exhibit.

Undoubtedly, the plaintiff is entitled to sympathy, but he is not entitled to sympathy as against a determination by impartial law. It may be that other persons think differently than would this jury, but it is not for this Court to set aside a decision made upon the ample evidence that had been presented to this jury on the interrogatories of whether or not the plaintiff had been employed by Perini or the Joint Venture.

Upon a recapitulation of all the credible evidence, and viewing the evidence in a light most favorable to the party in whose favor the jury's verdict has been rendered, I am satisfied that the jury's verdict should not be set aside.

Plaintiff's motion for new trial will be refused.

An appropriate Order is entered.